# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| S.A. Armstrong, LTD., | Civil No. 10-1917 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| The Bergquist Company, | |
| Defendant. | |

Cynthia M. Klaus, Esq., and James M. Susag, Esq., Larkin Hoffman Daly & Lindgren Ltd.; and Edward Wood Dunham, Esq., and Richard J. Ramsay, Esq., Wiggin & Dana LLP, counsel for Plaintiff.

Michael H. Streater, Esq., and Max C. Heerman, Esq., Briggs & Morgan, PA, counsel for Defendants.

## INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss (Doc. No. [13]) and Plaintiff's Motion to Stay (Doc. No. [21]). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss and denies Plaintiff's Motion to Stay.

## BACKGROUND

In April 2005, Plaintiff S.A. Armstrong, LTD. ("Armstrong") and non-party Torrington Research Company ("Torrington") entered into four joint development contracts for a new line of pumps for use in home heating applications. (Compl. ¶ 9.)

Armstrong alleges that, under the contracts, Torrington "promise[d] to deliver" pumps and Armstrong "agreed to finance the project." (*Id.* ¶ 10.)

In this lawsuit, Armstrong asserts claims against Defendant The Bergquist Company ("Bergquist") for fraudulent inducement, conspiracy to defraud, breach of contract, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). (*Id.* ¶ 1.) Armstrong alleges that Bergquist, acting with Bergquist's subsidiary, The Bergquist Torrington Company ("BT"), induced Armstrong to consent to an assignment of rights and obligations arising from the contracts from Torrington to BT. (*Id.*) Armstrong alleges that Bergquist engaged in this alleged misconduct in order to protect Bergquist's investment in Torrington and to ensure BT a stream of revenue from Armstrong's payments under the contracts. Armstrong alleges that it continued to fund the product development operations in reliance on Bergquist's omissions, misrepresentations, and deceptive acts, but that BT failed to satisfy its contractual obligations under the assigned contracts.

On April 29, 2010, Armstrong filed both this lawsuit against Bergquist and an arbitration action against BT (the "Arbitration"). *S.A. Armstrong, Ltd. v. Bergquist Torrington Co.*, Case No. 50 152 T 00327 10 (American Arbitration Association filed Apr. 29, 2010). On June 18, 2010, Bergquist filed a motion to dismiss Armstrong's breach of contract (Count 3) and violation of the CUTPA (Count 4) claims. Bergquist agreed to Armstrong's request for a seven-day extension to respond to the motion to dismiss. (Doc. No. [20].) Bergquist served discovery on Armstrong on July 15, 2010.

On July 19, 2010, Armstrong filed a motion to stay this action against Bergquist pending the outcome of the Arbitration against BT.

## DISCUSSION

### I. Plaintiff's Motion to Stay

Armstrong moves to stay the lawsuit pending a resolution in arbitration. A federal court must stay proceedings if it determines that a dispute falls within the scope of a valid arbitration agreement. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 69 5 (8th Cir. 1994) (citing 9 U.S.C. §§ 3 & 4). Armstrong asserts that the Court should stay claims, pending the outcome of the arbitration, even though the actions name different defendants.[1] The decision whether to stay such claims is within the Court's discretion. *Filson v. Radio Adver. Mktg. Plan, LLC*, 553 F. Supp. 2d 1074, 1092 (D. Minn. 2008).

Bergquist opposes Armstrong's motion to stay this action and argues that a stay will frustrate judicial economy and prejudice Bergquist. Bergquist accurately points out that Armstrong filed this suit and the arbitration action.[2] Bergquist also contends that it would not have agreed to Armstrong's request for an extension to respond to its motion to dismiss had Bergquist known that Armstrong would file a motion to stay instead of an opposition to the motion to dismiss. Bergquist alternatively requests attorney fees for

---

[1] Armstrong alleges claims against Bergquist in this lawsuit and against BT in the pending arbitration. Therefore, a mandatory stay is inappropriate as Armstrong has alleged claims against different parties in this suit and the arbitration.

[2] Armstrong argues that it never intended to prosecute the arbitration and this case simultaneously. (Mot. to Stay at 2.)

3

drafting the motion to dismiss and discovery if the Court grants Armstrong's motion to stay.

Considering Armstrong's actions of filing this suit and the arbitration the same day and then requesting a stay and the current status of the arbitration,[3] the Court concludes that granting a stay pending the outcome of the arbitration would be prejudicial to Bergquist. Accordingly, the Court denies Armstrong's motion to stay.[4]

## II. Defendant's Motion to Dismiss

Bergquist moves to dismiss Armstrong's breach of contract and claims under CUTPA. In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

---

[3] The parties have not yet chosen an arbitration panel. (Def.'s Mem. in Opp'n to Mot. to Stay 8 n.1.)

[4] The Court understands that there will be overlap between the issues presented in arbitration and before this Court. The Court encourages the parties to agree to a procedure whereby the parallel actions can be streamlined or staggered so as to preserve resources.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Bergquist argues that the breach of contract claim (Count 3) is time barred because the relevant agreements provide for a two year limitations period and Armstrong was aware of its potential breach of contract claims more than two years before this action was commenced. Alternatively, Bergquist argues that the breach of contract claim fails as a matter of law because there is no basis for any vicarious liability on the part of Bergquist for BT's alleged breaches of the agreements. Bergquist argues that Armstrong's CUTPA claim (Count 4) fails because the applicable statue of limitation for such claims is three years. Additionally Bergquist argues that Armstrong's CUTPA claim fails because the act only applies in the State of Connecticut, and Bergquist has no contacts with Connecticut in connection with the underlying controversy.

Armstrong argues that it was misled and has a good faith basis for its claims.[5] Armstrong requests that the Court deny the motion to dismiss before staying the case and, alternatively, that it be given 14 days from the order denying its motion to stay to file a brief opposing the motion to dismiss or an amended complaint. The Court declines to provide Armstrong additional time to do what is has had the opportunity, and the obligation under Local Rule 7.1, to do.

In Count 3 of its complaint, Armstrong alleges that BT breached agreements and that "Bergquist is vicariously liable" for the breaches "because its executives exercised complete control" over BT, Bergquist made representations, and Berquist caused BT to execute the assignment. (Compl. ¶¶ 51-52.) In Count 4, Armstrong alleges that "Berquist's actions, representations and omissions constitute unfair and deceptive acts or practices in violation of CUTPA." (*Id.* ¶ 57.) Armstrong argues that Bergquist's representations affected a form of trade and/or commerce in Connecticut. (*Id.* ¶ 58.)

The Court concludes that Counts 3 and 4 of Armstrong's Complaint are time barred and fail to state a claim for relief. Count 3 is time barred because the contracts contemplate a two-year statute of limitations. (Decl. of James Plewacki ¶ 6, Ex. D ¶ 10.2). The Product Development Agreement states:

> 10.2 **Time Limits on Bringing An Action.** Save and except for actions for indemnification by one Party against the other in respect of third Person claims, no action may be brought against either Party under this Agreement or otherwise

---

[5] The Court permitted Armstrong's counsel to be heard at the oral hearing even though Armstrong did not file an opposition to Bergquist's motion to dismiss as required by Local Rule 7.1.

> more than two (2) years after the Party bringing such action became aware of the facts which put it on notice thereof.

(*Id.*)

Although the precise date when Armstrong became aware of Torrington's breach is explicitly alleged in the complaint, Armstrong alleges that "[i]n the days and weeks that followed the consent's execution, Armstrong gave Bergquist/BT yet another opportunity to cut itself off from Torrington's failures," which implies that Armstrong had notice within a few days or weeks of the April 21, 2006 consent agreement. (Compl. ¶ 26.) Armstrong also alleges that it "had already developed serious concerns about Torrington's ability to fulfill its obligations under the Agreements" as early as May 2006. (Compl. ¶ 23.) This suit was not filed until April 2010, more than two years after Armstrong "became aware of the facts which put it on notice." Similarly, the CUTPA claim (Count 4) is time barred because the suit was not filed within the three-year statute of limitations for the CUTPA claims. Conn. Gen. Stat. § 42-110g(f). Thus, the Court grants Bergquist's motion to dismiss.

Although the Court need not reach the issues, as pled, the breach of contract claim also fails because Armstrong does not allege any basis for vicarious liability on Bergquist for BT's alleged breaches of agreements. Additionally, as pled, Armstrong's CUTPA claim fails because Armstrong has not alleged any facts to show that Bergquist has contacts with Connecticut in connection with the underlying controversy.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiff's Motion to Stay (Doc. No. [21]) is **DENIED.**

2. Defendant's Motion to Dismiss (Doc. No. [13]) is **GRANTED.**

3. Counts 3 and 4 of the Complaint are **DISMISSED WITH PREJUDICE**.


Dated: August 27, 2010            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge